**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
                                        :
BENJAMIN S. EDMUNDSON,                  :  CIVIL ACTION NO. 06-629 (MLC)
                                        :
     Plaintiff,                         :  MEMORANDUM OPINION
                                        :
     v.                                 :
                                        :
COMMISSIONER OF SOCIAL SECURITY,        :
                                        :
     Defendant.                         :
_____:
```

**COOPER, District Judge**

The plaintiff, Benjamin S. Edmundson ("plaintiff"), applies for judicial review of the final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. entry no. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

## BACKGROUND

The plaintiff filed a claim for DIB on December 26, 2002, and for SSI payments on January 21, 2003. (A.R. at 19.) The plaintiff claimed that he was unable to work beginning on July 31, 2002, due to HIV/AIDS, neuropathy, and related complications. (Id. at 20.) The claims were denied initially and on reconsideration, and the plaintiff filed a timely request for a hearing before an administrative law judge. (Id. at 19.)

Administrative Law Judge Michal L. Lissek ("ALJ") conducted a hearing on December 8, 2004, and the plaintiff was represented by his attorneys Robert Ryan and Kenneth Pilla.  (Id. at 19.)

The ALJ issued a decision on July 25, 2005, finding, inter alia, that (1) "claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits through the date of this decision," (2) "claimant has not engaged in substantial gainful activity since the alleged onset of disability," (3) "claimant's HIV/AIDS, neuropathy, drug and alcohol abuse are considered 'severe' based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c)," (4) "These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4," (5) "The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of this opinion," (6) "The claimant has the following residual functional capacity: light work," (7) "claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965)," (8) "claimant is an 'individual closely approaching advanced age' (20 C.F.R. 404.1564 and 416.964)," (9) "claimant has a 'high school (or high school equivalent) education' (20 C.F.R. §§ 404.1564 and 416.964)," (10) "claimant has no transferable skills from skilled work previously performed as described in the body of the decision (20 C.F.R. §§ 404.1568 and 419.968)," (11) "claimant has

2

the residual functional capacity to perform a significant range of light work (20 C.F.R. §§ 404.1567 and 416.967)," (12) "Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as gate guard, produce weigher, scale machine operator and inspector," and (13) "claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g))."  (Id. at 25-26.)

The ALJ concluded that plaintiff was not entitled to DIB or SSI payments.  (Id. at 26.)  The plaintiff requested review of the ALJ's decision by the Appeals Council on August 10, 2005.  (Id. at 14.)  The Appeals Council denied the plaintiff's request for review on December 7, 2005.  (Id. at 8.)  The plaintiff applied for review here on February 8, 2006. (Dkt. entry no. 1).

## DISCUSSION

### I.   Standard Of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing.  Id.  However, this judicial review is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an

examination of the record reveals that the findings of fact are supported by substantial evidence. Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). "Substantial evidence" in the context of a social security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Court, despite the deference given to administrative decisions, "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.3d 110, 114 (3d Cir. 1983). "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting

that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995). The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 434-35.

**II. Determining Eligibility For Disability Benefits**

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled." In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If the claimant is so engaged, the ALJ will find that the claimant is not disabled and the application for disability benefits will be denied. Id. at § 404.1520(b). If the claimant is not employed, the ALJ will

consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step. Id. at § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions. Id. at §§ 404.1521(a)-(b), 416.921(a)-(b). A claimant who does not meet this requirement is not disabled. Id. at § 404.1520(c). In essence, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience. Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows severity, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals a listed impairment, the claimant is presumed to be disabled, and the evaluation ends at this stage. Id. at § 404.1520(d). If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four. Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past. Id. at § 404.1520(a)(4)(iv). The claimant, if able to resume the former occupation, will not

6

be considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. at §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. at § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

**III. Analysis**

The plaintiff generally argues that (1) the ALJ's decision at step three that plaintiff's impairments did not equal a listed impairment is not based on substantial evidence in the record and (2) the ALJ erred at step four in failing to provide an evidentiary basis for the assessment of plaintiff's RFC.  (Pl. Br., at 5, 23.)  Specifically, the plaintiff argues that the ALJ erred by (1) "never compar[ing] the provisions of each of the

7

affected listings with the combination of plaintiff's symptoms and infections" (id. at 11), (2) "formulat[ing] a [RFC] assessment without taking into account all of plaintiff's demonstrated impairments and restrictions" (id.), (3) omitting that part of Dr. Bokhari's opinion stating that plaintiff could "stand and/or walk" for "at least 2 hours in an 8-hour workday" (id. at 12; A.R., at 231), and (4) "not identify(ing) the specific listing or group of listings he utilized for comparison" (id. at 14).

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429. The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. Id. While the ALJ is not required to reference each and every treatment notation with particularity in the analysis, the ALJ must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or

for the wrong reason." Plummer, 186 F.3d at 429.  This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence.  Cotter, 642 F.2d at 705.  The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored."  Id.

**A.   The Sufficiency of the ALJ's Explanation at Step Three**

Plaintiff argues that "the ALJ was confronted with medical evidence which absolutely proved that plaintiff met the Listings for PCP pneumonia, bacterial pneumonia, Hepatitis, candidiasis, weight loss, viral infections, [and] psychiatric restrictions (memory loss)."  (Pl. Br., at 17.)  The ALJ allegedly erred, according to plaintiff, because she "neither compared each individual AIDS manifestation with its specific listing nor did she combine all of plaintiff's HIV manifestations and opportunistic infections and compare the totality of his symptomatology with an individual listing."  (Id. at 17.) Plaintiff further alleges the ALJ improperly focused on (1) plaintiff's recovery from PCP pneumonia and HIV Wasting Syndrome - i.e., weight-loss, (2) plaintiff's admitted heroin abuse, and (3) that plaintiff would not have suffered from the extent of illness if he had received proper treatment.  (Id. at 17-22.)

9

The plaintiff's assertions are without merit because the ALJ considered the medical evidence and other appropriate factors in reaching her finding that plaintiff's impairments did not meet or medically equal any of the listings.  In step three of the sequential analysis, "the ALJ must determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  Pearson v. Barnhart, 380 F.Supp.2d 496, 504 (D.N.J. 2005).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five, where the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment."  Id.

Plaintiff relies on Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir. 2000), in which the Third Circuit held that "this Court requires the ALJ to set forth the reasons" for his or her decision.  Id. at 118-19.  The ALJ, however, is not required "to use particular language or adhere to a particular format in conducting his analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, the ALJ's findings need only provide "sufficient development of the record and explanation of findings to permit meaningful review."  Id.

10

The ALJ's opinion here provided a thorough review of all of the medical records and a comprehensive discussion of the plaintiff's condition to create a sufficient basis for judicial review. The ALJ at step two found that plaintiff's "medically determinable HIV/AIDS and neuropathy result in significant limitations in work related physical functioning and are therefore severe." (A.R. at 21.) With regard to step three of the analysis, the ALJ found:

> Although the claimant's attorney asserted that his HIV/AIDS met the requirements of listing 14.08, I do not find that the evidence supports this allegation. One episode of pneumonia is documented in the record and several episodes of candidiasis, but while compliant [with his medications] the claimant quickly recovered from these illnesses [and] even returned to work for awhile during the course of the application. He did lose weight, but then quickly gained it back and is now well above the weight he was before he became ill. There is also constant reference in the record to non-compliance and chronic drug use.

(Id.)

In the subsequent parts of her analysis, the ALJ discussed the evidence relating to, inter alia: (1) claimant's testimony that he was depressed, takes a lot of pills, suffers from frequent migraine headaches, and vomits from his medication; (2) plaintiff's hospital records from 2002 when he was admitted to the hospital with candidiasis, which included medical test results revealing positive HIV antibodies, Hepatitis C and "patchy infiltrate in the right upper lobe of the lung"; (3) the records of his treatment when he was readmitted four months later

in 2002 for bilateral lung pneumonia; (4) plaintiff's 2004 medical records indicating that his CD4 count ranged from 10 to 102 in 2003; (5) plaintiff's medical records indicating that he complained of neuropathy, thrush, cough, dizziness and myalgia, but also admitted to missing at least one dose of medicine per week due to oversleeping; (6) medical records from Dr. Pattarelli dated March 4, 2004 through September 24, 2004, indicating that plaintiff was non-compliant with his treatment and actively used drugs; and (7) results from plaintiff's consultative exam conducted by Dr. Bokhari on February 10, 2005, including Dr. Bokhari's findings that plaintiff was "capable of light work activity with pushing and pulling with the lower extremities limited due to neuropathy, and postural activities limited to occasionally" and "limited in fingering and feeling due to neuropathy."  (A.R. at 21-22.)

Plaintiff's claim that the ALJ erred in ignoring "medical evidence which absolutely proved that plaintiff met the Listings for PCP pneumonia, bacterial pneumonia, Hepatitis, candidiasis, weight loss, viral infections, [and] psychiatric restrictions (memory loss)" is without merit.  (Pl. Br., at 17.)  In support of her conclusion that the evidence failed to support plaintiff's assertions of disability, the ALJ explained that

> Although the records document that the claimant has experienced some manifestations of AIDS, treatment notes from Dr. Pitarelli [sic] and from Life Care clearly indicate that he was non-compliant with his treatment regimen for much of the period and admitted

12

> to drug use on many occasions (Exhibits 9F and 10F).
> Although he had one episode of pneumonia in 2002, this
> was before he began treatment, and his other four
> alleged episodes are not substantiated in the records.
> Curiously, he did not mention having any headaches at
> all at the consultative examination in February 2005.
> He admitted himself that his neuropathy improved when
> he stopped using drugs.  He also admitted to not taking
> his medications in May 2004 due to working at a new job
> with shifts, and on other occasions due to oversleeping
> (Exhibit 9F pg. 5 and 10F).  Progress notes dated 2003
> from Life Care show that when he was adhering to his
> treatment regimen, his weight, appetite and energy
> improved and that he was tolerating his medications
> very well (Exhibit 10F).  In fact, the records show a
> total weight gain of over 30 pounds during a two year
> period.  Although Dr. Pitarelli [sic] wrote on March 4,
> 2004 that the claimant's pain and fatigue were
> sufficiently severe to interfere with sustained
> concentration to prevent him from completing a full
> workday, I find that this report was written during a
> time when the claimant was non-compliant with his
> medication regime (Exhibit 9F pg. 26).  Based on
> treatment notes written when the claimant was
> compliant, I find that his condition improved, and that
> this assessment is not accurate.  I also find that the
> claimant's neuropathy improved and that he would not be
> limited in fingering and handling, or in standing and
> walking for long periods.

(A.R., at 22-23.)

The ALJ provided the necessary reasoning and reference to the medical evidence to support the conclusion that plaintiff's subjective complaints and Dr. Pattarelli's assessment that plaintiff could not perform even sedentary work were not credible.  The ALJ explained that plaintiff's subjective complaints and Dr. Pattarelli's assessment were not accurate because they were a result of plaintiff's repeated non-compliance with treatment, and that when plaintiff did comply with his

treatment the evidence showed his condition improved greatly. Cf. Williams v. Barnhart, No. 05-5491, 2006 WL 3623527, at *3 (3d Cir. Dec. 13, 2006) (remanding to Commissioner where the ALJ did not provide any explanation for finding the plaintiff not credible).

The ALJ's review of the evidence was sufficiently thorough under the standard articulated in Burnett and Jones to warrant a finding that the plaintiff's condition did not match or medically equal any listing. Plaintiff mischaracterizes the ALJ's findings and analysis when he likens them to the findings and analysis rejected by the Third Circuit as insufficient in Burnett. Whereas in Burnett the ALJ disregarded without acknowledgment or explanation the testimony of the claimant and objective medical diagnoses and reports, including one finding the claimant was "permanently and totally disabled," the ALJ here discussed the material medical evidence and testimony, as the aforementioned excerpts from the record demonstrate. Compare, A.R. at 21-23, with, Burnett, 220 F.3d at 119-22.

Plaintiff's argument that the ALJ's analysis is deficient because she "neither compared each individual AIDS manifestation with its specific listing nor did [she] combine all of plaintiff's HIV manifestations and opportunistic infections and compare the totality of his symptomatology with an individual listing" is also without merit because the ALJ stated in the

report that she did not find the evidence supported plaintiff's assertion that his HIV/AIDS met the requirements of Listing 14.08. (A.R., at 21.) The ALJ was not required to go into more detail concerning particular subsections of the listing because the ALJ is not required to identify specific listings in his or her analysis. Jones, 364 F.3d at 505. Moreover, plaintiff did not introduce any medical evidence, other than that properly rejected by the ALJ, to support his claims that his impairments satisfied the conditions of Listing 14.08.

The Court concludes that the ALJ's determination that the plaintiff's impairments did not meet or medically equal one of the listed impairments is supported by substantial evidence. The ALJ examined the available medical and testimonial evidence, including the plaintiff's testimony. Any arguments to the contrary advanced by plaintiff are not supported by the record.

### B. Sufficiency of the ALJ's RFC Assessment at Step Four

The plaintiff contends that the ALJ did not adequately explain the basis for the light work RFC determination. (Pl. Br., at 23.) More specifically, plaintiff argues the ALJ erred by relying on Dr. Bokhari's report as support for his conclusion that plaintiff was able to perform light work because Dr. Bokhari "executed a [RFC] form which clearly indicates that plaintiff can do no more than sedentary work activity due to his inability to stand for six hours in an eight hour workday." (Id. at 25.)

15

Plaintiff's argument is without merit because the ALJ adequately explained the basis for the light work RFC, and properly interpreted Dr. Bokhari's report and recommendations as supporting this conclusion.

The ALJ explained her conclusion that plaintiff retains the capacity to perform the requirements of light work as follows:

> [T]he evidence establishes that he has the capacity to function adequately to perform many basic activities associated with work.  It is evident that he has some continuing symptoms and some side effects from his medications, and as a result his capacity to perform work is somewhat restricted.  Therefore, I find that the claimant retains the residual functional capacity to perform light work with standing and or walking at least six hours and lifting up to twenty pounds occasionally and ten pounds frequently.  My conclusion is supported by the assessment of the consultative examiner [Dr. Bokhari] who also found the claimant capable of light work (Exhibit 11F).

(A.R., at 23.)

The Court concludes that the ALJ's determination was supported by substantial evidence in the record.  Dr. Bokhari found plaintiff had normal gait, range of motion, strength, reflexes, and negative cardiac examination.  (Id. at 230.)  He also found the plaintiff was capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for at least two hours in an eight hour work day, plaintiff's ability to sit wasn't affected by his impairment, his ability to push and/or pull was limited in the lower extremities, he had occasional postural limitations,

and no visual or communicative limitations. (Id. at 231-33.) The ALJ rejected Dr. Bokhari's finding that plaintiff suffered from limiting fingering and feeling manipulative functions because that limitation was "inconsistent with the doctor's finding of sensation loss in the lower extremities only (Exhibit 11F)." (Id. at 22.)

The ALJ did not err in finding that plaintiff failed to meet his burden of showing that he was unable to do light work. See Plummer, 186 F.3d at 428 (holding that claimant has the burden of production for the first four steps of the evaluation process). The ALJ did not accord controlling weight to Dr. Pattarelli's opinion that plaintiff's pain and fatigue prevented him from doing even sedentary work because (1) the opinion was not accompanied by any objective findings and (2) Dr. Pattarelli's assessment was based on the care of plaintiff during a time when he admitted non-compliance with this treatment. (A.R. at 23; see id. at 164.) The Court further notes that Dr. Pattarelli commented that plaintiff's "pain is not related to his HIV." (Id. at 164.) The Court therefore concludes that the ALJ's determination that the plaintiff maintained the RFC to perform light work is supported by substantial evidence.

**CONCLUSION**

The Court, finding that the Commissioner's decision was supported by substantial evidence, will therefore affirm the Commissioner's denial of the plaintiff's claim.  The Court will issue an appropriate order.

                                           s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge